UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT KOREN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 03 C 4261 |
| ) | |
| EAGLE INSURANCE AGENCY, INC., ) | Judge Joan B. Gottschall |
| an Illinois corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Koren has sued his former employer Eagle Insurance Agency, Inc. ("Eagle"), alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count I) and discrimination on the basis of race and/or national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Presently before the court is Eagle's motion for summary judgment. For the reasons set forth below, that motion is granted in part and denied in part.

## I. BACKGROUND[1]

Robert Koren began working for Eagle as an insurance broker in August 1984 when he was 41 years old, and he continued to work there for the next 18 years. During that time Koren received annual salary raises, and nothing in his personnel file indicated that he was not meeting Eagle's performance expectations. In early 2002, Koren began having problems with Eagle's new computer system. Fred Kops, Eagle's vice president of sales and Koren's direct supervisor, told Koren that the reason he was having problems with the computer was because he was "an old man." Koren was

---

[1] The following background is taken from the parties' Local Rule 56.1 statements of material facts. For purposes of the present motion Eagle does not contest any of the allegations in Koren's complaint or deposition testimony. Eagle 56.1 Stmt. at 1 n. 1.

59 years old at the time.

At some point on or before October 29, 2002, Eagle's president Jerry Cherney talked with Kops and decided to terminate Koren. Cherney called Koren on October 29 and told him he was being laid off for economic reasons. When Koren subsequently contacted Eagle to inquire about the status of his health care coverage, he was told that the cost of his insurance, which was entirely paid by Eagle, had been "skyrocketing and getting ridiculous." At the time of Koren's termination Eagle employed insurance brokers who were much younger and of a different race or ethnicity than Koren.

Eagle denies that its termination of Koren was motivated by discrimination. Rather, Eagle maintains that the real reason it terminated Koren was for stealing another employee's food. Although Cherney initially told Koren that Eagle had to let him go for economic reasons, Cheney subsequently informed him that he was being fired for stealing two slices of pizza that had been sitting on the table in the employee kitchen. The circumstances under which Koren took the pizza are at the core of the parties' present dispute.

Employee lunch theft apparently is somewhat of an epidemic at Eagle. The Eagle company handbook states that "[t]heft from the company or your fellow employee(s) is **unacceptable**. If caught, you will be fired. This includes taking a fellow employee's lunch ... ." Def.'s 56.1 Stmt. ¶ 15. (emphasis in original). In July 2002 Eagle management supplemented the employee handbook warning with the following email to its employees:

> We are very disappointed that the food **thief** in our midst is still taking other employees' food. This person is not just taking others [*sic*] lunches, desserts, etc. left in the refrigerator, but is taking bites out of partially eaten food left for a few moments in the kitchen. Perhaps the perpetrator thinks is funny [*sic*], a prank. We do not regard it as a prank. It is a very serious situation. Other employees have had to go without their lunch, had to throw away food that this person has violated and not been able to enjoy the food they purchased with the money they earned. It will not be tolerated.
>
> We will discover **the person responsible**, and you can be sure that the person will

be **immediately** dismissed.

*Id.* at ¶ 22. (emphasis in original). Koren received and read the email and generally was aware of Eagle's strict prohibition on lunch thievery.

On October 29, 2002, Eagle employee Migdalia Serrano ordered pizza for lunch. After lunch, approximately half the pizza remained, and Serrano put the remaining pizza in the restaurant's pizza bag and placed the bag on one of the tables in the company kitchen. At 4:51 p.m., Koren went into the kitchen, saw the pizza bag, and, reasoning that it was "open season" on cold pizza that had been sitting out in the open for four hours and did not have anyone's name on it, had a slice. At 4:54 p.m. Koren returned, took another slice, heated it up in the microwave, and left. The parties are able to recount Koren's late afternoon pizza eating with precision because Eagle's kitchen was under video surveillance at the time.

Serrano complained to Eagle management about the missing pizza, and on November 8, 2002, Cherney showed Koren the surveillance video and informed him he was being terminated for violating the company policy prohibiting the theft of another employee's food. Koren apologized for eating the pizza, but denied that he was the lunch thief Eagle had been trying to apprehend. Koren maintains that he thought he was initially justified in taking the pizza because: 1) from time to time, people would leave leftover pizza on one of the kitchen tables for others to eat; 2) it was "common knowledge" at Eagle that if pizza had been left out on the table with no markings identifying it, everyone could help themselves; and 3) Eagle management had previously eaten pizza that had been left on the kitchen table. Eagle claims that, while it occasionally provided community food, including pizza, for its employees, Cherney was unaware of any custom at Eagle by which employees would leave their own pizza for others to eat, particularly in light of the heightened sensitivity to food ownership caused by the antics of the food thief.

## II. ANALYSIS

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether there is a genuine issue of material fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### A. Evidence of Discrimination.

"The ADEA bars an employer from discriminating against any individual in the 'compensation, terms, conditions, or privileges of employment, because of such individual's age[.]'" *Solon v. Gary Community Sch. Corp.*, 180 F.3d 844, 849 (7th Cir. 1999) (quoting 29 U.S.C. § 623(a)(1)). To survive the motion for summary judgment, Koren need only raise an inference of discrimination. *Fuka v. Thomson Consumer Elec.*, 82 F.3d 1397, 1402 (7th Cir. 1996). Koren may raise an inference of discrimination using direct evidence or indirectly through the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004).[2]

Koren claims that he has sufficient evidence for either burden of proof, but his direct evidence claim is not supported by the record. Koren argues only that Kops' "old man" remark,

---

[2] Although the parties' papers focus on Koren's ADEA claim, the Title VII discrimination analysis is the same. *Fuka*, 82 F.3d at 1402.

which allegedly happened at least twice, demonstrates that an individual with discriminatory animus may have affected the decision to terminate him. Isolated references to Koren as an "old man" are insufficient to meet the direct evidence burden of proof. *See Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 301 (7th Cir. 1996) (refusing to impute stray remarks such as "old man" to decision-makers as direct evidence of age discrimination); *Ingram v. NWS, Inc.*, No. 92 C 8339, 1997 WL 688882, *6 (N.D. Ill. Oct. 23, 1997) ("while potentially insulting, stray references such as 'old man' simply do not constitute the type of blatant remarks that constitute direct evidence of age discrimination"). Accordingly, Koren must proceed under the indirect method of demonstrating discrimination set forth in *McDonnell Douglas*.

Under the *McDonnell Douglas* framework, Koren must establish that: (1) he is a member of a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) Eagle treated similarly situated employees outside the class more favorably. *Olson*, 387 F.3d at 635. If Koren succeeds in demonstrating this prima facie case, the burden shifts to Eagle to articulate a legitimate business justification for its action. If Eagle can do so, the burden shifts back to Koren to present sufficient evidence to create a triable issue with respect to whether Eagle's justification was mere pretext. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993). Assuming Koren succeeds in casting sufficient doubt on the legitimacy of Eagle's justification, the case proceeds to trial. *Olson*, 387 F.3d at 636.

Eagle first argues that Koren cannot establish a prima facie case of discrimination under *McDonnell Douglas* because it is undisputed that he ate another employee's lunch in violation of company rules, and an employee who violates company rules is not performing his job in a satisfactory manner. This argument is a non-starter. Koren's unchallenged deposition testimony suggests that there was a de facto policy at Eagle whereby unmarked pizza that had been sitting out

was free for the taking. In other words, Koren has raised a triable issue of fact as to whether his actions actually violated any company policy or rule. Because Eagle does not challenge the other *McDonnell Douglas* factors, Koren has made his prima facie case of discrimination for purposes of this motion.[3]

Eagle argues that even if Koren can make a prima facie case, he cannot establish that its proffered justification for his termination was pretext. To overcome a claim of pretext, Eagle is required only to provide "an honest reason, not necessarily a reasonable one." *Flores v. Preferred Tech. Group*, 182 F.3d 512, 516 (7th Cir. 1999). Eagle emphasizes that trial courts are not to act as "super personnel departments" or second-guess an employer's good faith business judgments. *See, e.g., Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2002). According to Eagle, summary judgment is appropriate irrespective of whether the pizza was free for the taking because Cherney reasonably and honestly believed that Koren had violated a company rule. Koren counters that he has raised fact questions as to whether there was a de facto policy of allowing employees to eat apparently abandoned food that would make it implausible for Cherney to have a good faith belief that Koren violated any company rules.[4]

---

[3] Eagle also asserts that Koren has failed to demonstrate his race (Caucasian) puts him in a protected class or that similarly situated employees from different racial or ethnic backgrounds were treated more favorably. Eagle's opening brief does not contain this argument, which mentions race briefly and even then only in the context of pretext. Because Eagle failed to develop this argument until its reply, Eagle has waived it for summary judgment purposes. *See Duncan v. State of Wis. Dep't of Health and Family Servs.*, 166 F.3d 930, 934 (7th Cir. 1999) (arguments not developed in a party's opening brief are deemed waived or abandoned).

[4] Koren also briefly argues that even if the alleged pizza theft did motivate Eagle to terminate him, a jury still should be allowed to consider whether Eagle was motivated by other, improper factors, including race. Eagle responds that Koren has not provided any evidence of race discrimination in the first place. This is probably because Eagle failed to raise the argument until its reply. *See* n. 3 above. Because the court considers Eagle's Title VII *prima facie* arguments waived for purposes of its summary judgment motion, it finds that Eagle has conceded them for purposes of this motion by choosing to confine the race/ethnicity arguments in its initial

The Seventh Circuit already has examined the intersection of alleged food theft and pretext. *See generally Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285 (7th Cir. 1999). *Stalter* involved an African-American Wal-Mart employee who was terminated for stealing taco chips from another employee. Like Eagle, Wal-Mart maintained a break room for its employees, and some employees had complained to Wal-Mart about non-abandoned food disappearing from the break room. *Id*. at 287. Wal-Mart considered these possible thefts to be "gross misconduct" under Wal-Mart's policies, which was cause for immediate termination. *Id*. at 287-88.

Stalter ate some taco chips that had been left in the break room, and argued that his subsequent termination for theft of another employee's food was pretext because employees would often eat food in the break room that appeared to be abandoned. *Id*. The district court rejected that contention, finding that Stalter technically committed theft under Wal-Mart's policy. *Id*. at 288. The Seventh Circuit reversed and remanded the case for trial, holding that:

> Stalter produced evidence that food left in the break room in this fashion was considered abandoned and was fair game for anyone who wished to eat it. Wal-Mart claims that food left on tables was abandoned but that food left on the countertop was not considered abandoned by employees. This is a classic dispute of material fact, best left to the finder of fact to resolve, and on summary judgment, we construe the facts in Stalter's favor.

*Id*. at 290. In reaching its decision, the *Stalter* court also considered the fact that Wal-Mart changed its reason for termination, first claiming that Stalter's co-worker complained to the company about the incident and later conceding that she did not. *Id*. at 291. *See also Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 634 (7th Cir. 1996) (failure to express proffered non-discriminatory explanation earlier despite opportunities to do so gives rise to inference that later expressed reason

---

brief to the question of pretext. *See, e.g., Godinet v. Management & Training Corp.*, 56 Fed. Appx. 865, 870 (10th Cir. 2003)("Defendant did not explicitly concede Plaintiff established a prima facie case of retaliation; however, we assume it did so implicitly because its appellate argument was devoted entirely to rebutting pretext.").

is pretext).

Eagle attempts to distinguish *Stalter*, noting that the employee in *Stalter* whose food was eaten was not upset and did not complain to management, unlike Migdalia Serrano. According to Eagle, Serrano's complaint, coupled with the surveillance tape, bolsters Eagle's contention that Cherney's decision to terminate Koren, "right or wrong," was motivated by the desire to enforce company rules rather than by discriminatory animus. Eagle's argument is unconvincing. In *Stalter*, Wal-Mart similarly put forth evidence in support of its claim that it sincerely applied its theft policy, but the court held that the *de minimis* nature of the theft, as well as the severity of the punishment, created a question for the fact-finder as to pretext. *Stalter*, 195 F.3d at 290. The same rationale applies here.

Eagle's proffer is undermined further by Cherney's shifting reasons for Koren's termination. Eagle concedes that Cherney initially lied to Koren when he told him he was being laid off for economic reasons, but claims that this was because he was "very distraught at the time of the conversation." Def.'s 56.1 Stmt. ¶ 55. Perhaps he was, but an employer's admission that the first reason given for an employee's termination was pretext raises a factual issue as to whether subsequent reasons are, and this is all that Koren needs to show to survive a motion for summary judgment. Eagle's motion for summary judgment on the issue of discrimination is denied.

**B.     Hostile Work Environment.**

Eagle also argues that, to the extent that Koren alleges that Kops' "old man" comments created a hostile work environment, this claim must fail as a matter of law because those comments were stray, offhand remarks that were not particularly severe. The Seventh Circuit has not determined whether a hostile work environment claim may be brought under the ADEA, but has assumed without deciding that such a claim would be actionable. *See, e.g., Bennington v.*

*Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001). Eagle maintains that a few isolated references to age, without more, are insufficient to create a hostile work environment. *See Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998)(court must consider frequency and severity of discriminatory conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

Koren does not address Eagle's argument in his response, and presumably does not intend to make a hostile work environment claim at trial. However, to the extent that Koren wishes to assert such a claim, the court agrees that the scant evidence of a hostile work environment put forward by Koren, namely Kops' "old man" remarks, would not sustain the claim as a matter of law. Accordingly, the court will grant summary judgment as to the potential hostile work environment claim under the ADEA.

### III. CONCLUSION

For the reasons set forth above, Eagle's motion for summary judgment is denied with the exception of any claims of hostile work environment brought under the Age Discrimination in Employment Act.

ENTER:

                                                  /s/
                                    Joan B. Gottschall
                                    United States District Judge

DATED: March 11, 2005